UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ALI LIEOGO,

               Petitioner,                    **DECISION AND ORDER**

        v.                                   6:25-CV-06615 EAW

JOSEPH FREDEN, in his official capacity
as Deputy Field Office Director, Buffalo
Field Office, U.S. Immigration & Customs
Enforcement, et al.,

               Respondents.
_____

**INTRODUCTION**

Because of a "policy change" by the current executive administration, reversing decades of past practice and reinterpreting a law that traditionally applied to noncitizens stopped at the border, Petitioner Ali Lieogo ("Lieogo"), who has been residing in this country for more than two years, was taken into custody almost two months ago by Immigration and Customs Enforcement ("ICE"). He is detained at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York.

Pending before the Court is Lieogo's petition under 28 U.S.C. § 2241 (Dkt. 1) and emergency motion for a temporary restraining order ("TRO") (Dkt. 2), and Respondents' motion to dismiss (Dkt. 7). For the reasons set forth below, the petition is granted to the extent that Respondents must provide Lieogo a bond hearing before an immigration judge ("IJ") consistent with the terms of the Order issued by the Court on November 21, 2025.

(Dkt. 9). The emergency motion for a TRO is denied as moot, and Respondents' motion to dismiss is denied.

## BACKGROUND

### A. Factual Background

Lieogo is a 38-year-old citizen of Burkina Faso. (Dkt. 1 at 3). He entered this country without inspection on or about May 2, 2023, was released from ICE custody on his own recognizance, and was issued a Notice to Appear in Immigration Court. (*Id.*; Dkt. 1-1). In December 2023, Lieogo filed an I-589 Application for Asylum, Withholding of Removal, and Protection Under the Convention Against Torture. (Dkt. 1 at 3). Although initially denied relief by an IJ, an appeal of that denial remains pending with the Board of Immigration Appeals ("BIA"). (*Id.*).

Lieogo possesses valid employment authorization and has been working as a retail clerk. (*Id.* at 10). He has no criminal record. (*Id.*). But on October 13, 2025, he was taken into custody and has been held since that time with no bond hearing. (*Id.* at 3, 10-11). Lieogo is being held at the BFDF. (*Id.* at 4).

### B. Procedural Background

Represented by counsel, Lieogo filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on October 27, 2025. (Dkt. 1). The same day he sought a TRO "to require his release or for a bond hearing on the merits to be held by Respondents within 7 days. . . ." (Dkt. 2 at 2). Consistent with the scheduling order issued by the Court (Dkt. 3), Respondents filed a motion to dismiss (Dkt. 7), and Lieogo filed papers in opposition (Dkt. 8). Oral argument was held before the undersigned on November 21,

2025. (Dkt. 10). As announced at the conclusion of the oral argument, the Court issued an Order that same day granting the petition to the extent that Lieogo sought a prompt bond hearing and denying the motion to dismiss. (Dkt. 9). This Decision and Order sets forth the reasons for the Court's ruling in more detail.

## ANALYSIS

As detailed in the decision issued by the undersigned on November 24, 2025, in *Quituizaca Quituisaca v. Bondi et al.*, No. 6:25-CV-6527-EAW, 2025 WL 3264440 (W.D.N.Y. Nov. 24, 2025), a "change in policy" by the current executive administration has caused noncitizens residing in this country to be held in custody without bond based on a law historically used to detain noncitizens at the border (8 U.S.C. § 1225(b)(2)). This Court, like most to have considered the issue,[1] has concluded that the law does not allow for what Respondents claim, and rather a noncitizen like Lieogo is held pursuant to 8 U.S.C. § 1226(a) and thus, entitled to a bond hearing. The Court relies on the reasoning set forth in *Quituizaca Quituisaca* to support its conclusion that § 1225(b)(2) does not apply here, and furthermore any argument that Lieogo must administratively exhaust his remedies is without merit. The Court further addresses below additional issues not addressed in *Quituizaca Quituisaca*—the jurisdictional defenses raised by Respondents and application of the three-factor balancing test established in *Mathews v. Eldridge*, 424

---

[1] According to a decision issued on November 20, 2025, at least 282 decisions from district courts have found the application of § 1225(b)(2)(A) to noncitizens residing in the United States unlawful. *Patel v. McShane*, No. CV 25-5975, 2025 WL 3241212, at *1 (E.D. Pa. Nov. 20, 2025). By contrast, counsel represented at oral argument in this matter that only three decisions have favored the government.

U.S. 319 (1976), to ascertain the scope of the bond hearing that must be provided to Lieogo.[2]

A.      **Jurisdictional Arguments**

In support of their motion to dismiss, Respondents argue that 8 U.S.C. §§ 1252(e)(3), 1252(g), and 1252(b)(9) each bar review of Lieogo's claims. (Dkt. 7-1 at 5-10). For the reasons that follow, the Court disagrees.

1.      8 U.S.C. § 1252(e)(3)

Section 1252(e)(3)(A) provides that "[j]udicial review of determinations under section 1225(b) of this title and its implementation is available in an action instituted in the United States District Court for the District of Columbia. . . ."[3] Respondents argue that Lieogo seeks judicial review of a written policy or guideline implementing § 1225(b)(2), and thus his claims are covered by § 1252(e)(3)(A)(ii) and must be commenced, if at all, in the District of Columbia District Court. (Dkt. 7-1 at 5-6). The Court disagrees.

As an initial matter, § 1252(e)(3) is titled "Challenges on validity of the system." But Lieogo "does not raise any systemic challenges, nor does he challenge the implementation of section 1225(b)(2)." *Duvallon Boffill v. Field Office Director*, No. 25-CV-25179-JB, 2025 WL 3246868, at *2 (S.D. Fla. Nov. 20, 2025); *see also Canedo*

---

[2]     The petitioner in *Quituizaca Quituisaca* had been granted bond by an IJ under § 1226(a) so there was no need to engage in the *Mathews* analysis. In addition, Respondents did not raise the jurisdictional defenses in support of their motion to dismiss in that case.

[3]     The title of § 1252(e) is "Judicial review of orders under section 1225(b)(1)" and thus, there is an argument that subparagraph (3) only applies to § 1225(b)(1), not § 1225(b)(2). But unlike subparagraphs (1) and (2) under § 1252(e), the text of subparagraph (3) references § 1225(b), not just § 1225(b)(1).

*Cardozo v. Noem et al.*, No. 1:25-CV-1415, 2025 WL 3274381, at *2 (W.D. Mich. Nov. 25, 2025). Rather, Lieogo's petition "challenges the lawfulness of *his* detention without a bond hearing, not the validity of the statutory scheme itself." *Duvallon Boffill*, 2025 WL 3246868, at *2; *see also Mata Velasquez v. Kurzdorfer*, No. 25-CV-493-LJV, 2025 WL 1953796, at *6-7 (W.D.N.Y. July 16, 2025) (rejecting § 1252(e)(3) jurisdictional argument).

In addition, because by its express terms § 1252(e)(3) is limited to determinations under § 1225(b), and the Court has concluded that § 1225(b) does not apply to Lieogo's detention, § 1252(e)(3) does not deprive the Court of jurisdiction. *Duvallon Boffill*, 2025 WL 3246868, at *2 (collecting cases holding the same).

    2.    <u>8 U.S.C. § 1252(g)</u>

Section 1252(g) states that notwithstanding any other provision of law, including 28 U.S.C. § 2241, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." Respondents argue the "Secretary of Homeland Security's decision to *commence removal proceedings*, including the decision to detain an alien pending such removal proceedings, squarely falls within this jurisdictional bar." (Dkt. 7-1 at 6 (emphasis in original)). The Court disagrees.

Respondents have "dramatically overstate[d] the reach of § 1252(g). . . ." *Mahdawi v. Trump*, 136 F.4th 443, 450 (2d Cir. 2025) (holding that unlawful detention claims are collateral to removal process and fall outside § 1252(g)'s narrow jurisdictional bar). The

provision's "bar on jurisdiction is 'narrow[]' and 'applies only to three discrete actions': a decision 'to "**commence** proceedings, **adjudicate** cases, or **execute** removal orders."'" *Id*. (citations omitted) (emphasis in original).

As Judge Lawrence J. Vilardo of this District explained in *Mata Velasquez*, when rejecting a similar argument based on § 1252(g):

> This Court agrees that it lacks jurisdiction to review the government's discretionary decisions to initiate removal proceedings. In other words, this Court does not have the power to second-guess the wisdom of the executive branch's exercise of its discretion. But district "[c]ourts can review 'how' [the respondents] exercise their discretion because such a claim does not ask 'why the Secretary chose to execute the removal order' but rather 'whether the way [the respondents] acted accords with the Constitution and the laws of this country.'" "Put another way[, the r]espondents are empowered to remove [the p]etitioner at their discretion. But they cannot do so in any manner they please." Thus, district courts can—and do—entertain challenges to the procedural processes that the executive branch follows during the removal process.

2025 WL 1953796, at *6 (citations omitted). Here, Lieogo does not seek to prevent the executive branch's commencement of a proceeding (or its adjudication of a case or execution of a removal order). Rather, he seeks to prevent his detention without due process and in violation of the law. "[D]etention is but one of 'many . . . decisions or actions that may be part of the deportation process,' but it is outside the 'three discrete actions' § 1252(g) cordons off." *Ozturk v. Hyde*, 155 F.4th 187, 208 (2d Cir. 2025) (concurring opinion denying rehearing en banc) (quoting *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999)). Thus, § 1252(g) does not bar the Court's consideration of Lieogo's petition.

3. <u>8 U.S.C. § 1252(b)(9)</u>

Section 1252(b)(9) states as follows:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

Relying on this provision, Respondents argue that taken together with § 1252(a)(5) (stating that "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal. . . ."), this means that "*any* issue—whether legal or factual—arising from *any* removal-related activity can be reviewed *only*" in a court of appeals. (Dkt. 7-1 at 8 (quoting *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) (emphasis in original)). According to Respondents, because Lieogo "challenges the decision and action to detain him" and because that detention "arises from DHS's decision to commence removal proceedings," then the detention is "an 'action taken . . . to remove him from the United States,'" and this Court's consideration of the challenge is barred by § 1252(b)(9). (Dkt. 7-1 at 9).

Respondents' position is fatally flawed. First, "the language of § 1252(b) contradicts the government . . . [because it] sets out requirements only with respect to review of an order of removal. . . ." *Mahdawi*, 136 F.4th at 451 (cleaned up). "No order of removal is at issue here." *Id*. at 452; (*see* Dkt. 8 at 2 ("In the instant case, there is no

final order of removal in place, and Petitioner is detained by ICE pending final resolution of his immigration proceedings.")).

Second, Respondents' position is not supported by Supreme Court precedent. *See*, *e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) ("We conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention."); *see also Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 19 (2020) ("§ 1252(b)(9) does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined." (cleaned up)); *Jennings v. Rodriguez*, 583 U.S. 281, 295 n.3 (2018) ("The question is not whether *detention* is an action taken to remove an alien but whether *the legal questions* in this case arise from such an action. . . . [T]hose legal questions are too remote from the actions taken to fall within the scope of § 1252(b)(9)."). Indeed, Respondents' position conflicts with the one they have taken in other cases where they have acknowledged that the Court has jurisdiction over a petitioner's detention. *See*, *e.g.*, *Ahmed v. Freden*, 744 F. Supp. 3d 259, 264 (W.D.N.Y. 2024) ("Respondent does 'not dispute that this Court has subject matter jurisdiction over Petitioner's challenge to his continued detention in custody.'").

Lieogo's claims may be resolved without affecting any pending removal proceedings. Lieogo challenges his detention in violation of due process and the law, and those issues concerning "the lawfulness of his detention and his right to a bond hearing are distinct from the merits of his removeability." *Aguilar v. English et al.*, No. 3:25-CV-898 DRL-SJF, 2025 WL 3280219, at *5 (N.D. Ind. Nov. 25, 2025). Thus, this Court joins the

numerous courts throughout the country that have concluded § 1252(b)(9) does not operate as a jurisdictional bar to a claim like the one asserted in Lieogo's petition. *See id.* (§ 1252(b)(9) did not bar review of petition challenging detention under § 1225(b) instead of § 1226(a)); *Cardozo*, 2025 WL 3274381, at *3 (same); *Romero Sanchez v. Larose et al.*, No. 25-CV-3136 JLS (JLB), 2025 WL 3268590, at *2-3 (S.D. Cal. Nov. 24, 2025) (same); *Vasquez Juarez v. Noem et al.*, No. 5:25-CV-02972-RGK-JC, 2025 WL 3251658, at *2 (C.D. Cal. Nov. 21, 2025) (same); *Duvallon Boffill*, 2025 WL 3246868, at *4 (same); *Rusu v. Noem et al.*, No. 25 C 13819, 2025 WL 3240911, at *3 (N.D. Ill. Nov. 20, 2025) (same); *Patel*, 2025 WL 3241212, at *2 (same); *Estrada Elias v. Night et al.*, No. 1:25-CV-00594-BLW, 2025 WL 3228262, at *4 (D. Idaho Nov. 19, 2025) (same); *Maldonado v. Baker*, No. CV 25-3084-TDC, 2025 WL 2968042, at *3-4 (D. Md. Oct. 21, 2025) (same); *Patel v. Crowley*, No. 25 C 11180, 2025 WL 2996787, at *2 (N.D. Ill. Oct. 24, 2025) (same).

    **B.**    <u>*Mathews v. Eldridge*</u>

"In the Second Circuit, the balancing test laid out by the Supreme Court in *Mathews v. Eldridge* . . . applies when determining the 'adequacy of process in the context of civil immigration confinement.'" *Hyppolite v. Noem*, No. 25-CV-4304 (NRM), 2025 WL 2829511, at *13 (E.D.N.Y. Oct. 6, 2025) (citation omitted). The three *Mathews* factors are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

This Court has previously expressed the view that due process requires the government to bear the burden of proving by clear and convincing evidence that detention is justified at a bond hearing under § 1226(a). *Adejola v. Barr*, 408 F. Supp. 3d 284, 287 (W.D.N.Y. 2019);[4] *see also Onosamba-Ohindo v. Searls*, 678 F. Supp. 3d 364, 374 n.2 (W.D.N.Y. 2023), *appeal pending* No. 23-6804 (2d Cir.). The Court recognizes that in *Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020), the Second Circuit held that the petitioner's prolonged incarceration "for fifteen months without an end in sight or a determination that he was a danger or flight risk, violated due process," *id*. at 855, and that the case did not require the court "to establish a bright-line rule for when due process entitles an individual detained under § 1226(a) to a new bond hearing with a shifted burden," *id*. at 855 n.13.

---

[4] To the extent the undersigned expressed the view in *Adejola* that it lacked jurisdiction to restrain the government from transferring a petitioner outside the Court's jurisdiction, 408 F. Supp. 3d at 287-88, the Court agrees with Judge Vilardo of this District that "more recent caselaw has caused this Court to reconsider that position," *Alvarez Ortiz v. Freden et al.*, No. 25-CV-960-LJV, 2025 WL 3085032, at *2 n.3 (W.D.N.Y. Nov. 4, 2025); *see also Mahdawi*, 136 F.4th at 455-56 (declining to issue writ of mandamus seeking to hold district court lacked authority to order petitioner's transfer). The Court has observed firsthand in its handling of the numerous petitions filed based on the executive branch's new interpretation of § 1225(b)(2), that allowing a petitioner to be transferred outside the Court's jurisdiction impedes the efficient and effective resolution of the pending habeas corpus petition. The repeated and frequent transfers of petitioners undermine the petitioners' access to counsel and ability to participate in the habeas corpus proceedings. *See* 28 U.S.C. § 2243 ("Unless the application for the writ and the return present only issues of law the person to whom the writ is directed shall be required to produce at the hearing the body of the person detained."). Thus, at least pending a resolution of the issues in the petition, the Court concludes that it does have jurisdiction to require Lieogo to be kept in the District in order to facilitate the resolution, ensure his ability to fully participate, and not interfere with his access to counsel. *See also Estrada Elias*, 2025 WL 3228262, at *4 ("District courts in immigration habeas actions thus retain the inherent equitable authority to restrict the transfer of petitioners during the pendency of the proceedings.").

But even though Lieogo has not been detained anywhere near the length of time in *Velasco Lopez*, under the circumstances here, "[g]iven the significant liberty interest at stake, the high risk of erroneous deprivation, and Respondents' failure to show a significant interest in [his] detention," *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588, at *13 (S.D.N.Y. Aug. 13, 2025), the Court concludes that Respondents' ongoing detention of Lieogo "with no process at all, much less prior notice, no showing of changed circumstances, or opportunity to respond," *id.*, violates due process and thus requires a bond hearing be provided where the government bears the burden of proof.

To be clear, notwithstanding its prior determinations, the Court has applied the *Mathews v. Eldridge* factors to Lieogo's situation. As for the first factor, Lieogo's private interest "is the most significant liberty interest there is—the interest in being free from imprisonment." *Black v. Decker*, 103 F.4th 133, 151 (2d Cir. 2024) (quoting *Velasco Lopez*, 978 F.3d at 851). The BFDF, "while perhaps not akin to a maximum-security prison," is not "meaningfully different from at least a low-security penal institution for criminal detention." *Wilson v. Barr*, No. 1:19-CV-01364 EAW, 2020 WL 13554798, at *7 (W.D.N.Y. May 1, 2020). And Lieogo's liberty interest is even more heightened because the deprivation of his liberty is not the result of any criminal adjudication. *See Alvarez Ortiz*, 2025 WL 3085032, at *13 ("[I]t is important to recognize that the deprivation of liberty that individuals detained under section 1226(a) experience is 'not the result of a criminal adjudication.' This, too, heightens [the petitioner's] interest in his liberty." (citation omitted)).

Consideration of the second factor leads the Court to the conclusion that "the risk of erroneous deprivation is particularly high here." *Lopez Benitez*, 2025 WL 2371588, at *12. Lieogo's "'re-detention without' any individualized assessment such as 'any change in circumstances or procedure establishes a high risk of erroneous deprivation of his protected liberty interest.'" *Id*. This is underscored by Respondents' detention of Lieogo under a newly-imposed interpretation of § 1225(b)(2) "that runs counter to precedent and decades of past practice." *Alvarez Ortiz*, 2025 WL 3085032, at *14. In other words, even though Lieogo was released on his own recognizance some two years ago, Respondents took him into custody without any change in circumstances or individualized assessment, and have held him in custody without any bond hearing or due process.

As for the third factor, the Court acknowledges that the government's discretion to detain individuals under § 1226(a) "'is valid where it advances a legitimate governmental purpose,' such as 'ensuring the appearance of aliens at future immigration proceedings and preventing danger to the community.'" *Lopez Benitez*, 2025 WL 2371588, at *12. But there is nothing in the record demonstrating that Lieogo presents those risks. Again, after arriving at the border in May 2023, he was released from ICE custody on his own recognizance—a result that could not have been validly achieved unless ICE "did not consider him to be a flight risk or danger to the community. . . ." *Id*. Nothing in the record suggests that ICE's assessment has changed and, in fact, there is no individualized assessment in the record supporting Lieogo's detention. Rather, if it was not for a policy change reversing decades of past practice, Lieogo would not be detained.

Thus, in order to comply with due process, Lieogo must be afforded a bond hearing before an IJ at which Respondents shall have the burden to demonstrate dangerousness or flight risk by clear and convincing evidence. In deciding whether Respondents have met their burden of proof, the IJ must consider whether less-restrictive alternatives to detention can reasonably address the government's interest in Lieogo's continued detention. In addition, if the IJ finds that Respondents have not met this burden, then in setting any bond the IJ must consider Lieogo's ability to pay and alternative conditions of release.

## CONCLUSION

For the foregoing reasons, the petition is granted to the extent that Petitioner seeks a bond hearing that shall be conducted in accordance with the terms of the Court's Order entered on November 21, 2025. (Dkt. 9). The emergency motion for a TRO (Dkt. 2) is denied as moot, and Respondents' motion to dismiss (Dkt. 7) is denied.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:     November 26, 2025
           Rochester, New York